UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FREDERICK ROBERT ELLARD,

           Petitioner,

-vs-                                              Case No. 8:05-cv-316-T-17MAP

FLORIDA PAROLE COMMISSION and
WARDEN TADLOCK,

           Respondent.
_____/

**ORDER**

Petitioner, Frederick Robert Ellard, an inmate in the custody of the Florida Department of Corrections, filed the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2241, challenging his imprisonment upon revocation of conditional release supervision. The Court construes the petition as a 28 U.S.C. § 2254 petition. See Dill v. Holt, 371 F.3d 1301 (11th Cir. 2004)(citing Medberry v. Crosby, 351 F.3d 1049, 1059 (11th Cir. 2003)); Heard v. Crosby, 2005 WL 941020 (N.D. Fla., April 13, 2005).

Respondent, Florida Parole Commission (Commission), is charged with the administration of conditional release supervision pursuant to Florida Statute §947.1405.

FACTUAL BACKGROUND

On June 8, 1990, Petitioner was sentenced to a fifteen-year sentence for Sexual Battery in Pinellas County case no. 89-15361, and to concurrent fifteen-year sentences for kidnapping and four counts of sexual battery in Pinellas County case no. 89-15476 (Exhibit A). On October 17, 1996, Petitioner was released until September 10, 2004 to conditional

release supervision subject to specific terms and conditions in accordance with Florida Statute §947.1405. (Exhibit B)

On August 27, 2003, the Florida Parole Commission issued a warrant for retaking Petitioner charging him with unlawfully touching, striking, or causing bodily harm to his wife, Stacey Ellard, against her will. (Exhibit C)

At a violation hearing on September 30, 2003, Mrs. Ellard recanted the statement she gave to police, that Petitioner grabbed her and pushed her against a wall stating he would "get a butcher knife and fillet" her. (Exhibit D)  Instead, Mrs. Ellard testified that she provoked her husband and he pushed his chest against hers to get away from her. (Exhibit D) Petitioner's conditional release officer testified that after bonding out of jail, Petitioner called the officer and left a voice mail message that he had had an altercation with his wife and pushed her out of the way as he ran from the house. (Exhibit D) Petitioner later spoke directly with the officer and recounted the incident as pushing his wife out of the way. (Exhibit D) Petitioner testified that he became disorientated after his wife sprayed him with pepper spray and he pushed her to get away. (Exhibit D). Based on the testimony presented at the hearing, the hearing examiner found Petitioner guilty of unlawfully striking or touching his wife and recommended revocation of conditional release supervision. (Exhibit D)

On November 19, 2003, the Florida Parole Commission revoked Petitioner's conditional release supervision effective September 5, 2003. (Exhibit E)

## STATE COURT REMEDIES

On February 10, 2004, Petitioner submitted a Petition for Writ of Habeas Corpus to the Fifth Judicial Circuit Court, Sumter County, Florida, arguing that the evidence presented at the hearing did not demonstrate a willful and substantial violation. (Exhibit F) The Commission responded that the willful and substantial nature of an incident was a question of fact properly determined by the hearing examiner and accepted by the Commission. (Exhibit G) Petitioner submitted a Reply and an Opposing Affidavit. (Exhibit H) On August 6, 2004, the Honorable Hale Stancil entered an Order Denying the Petition for Writ of Habeas Corpus in Sumter County case no. 2004-CA-000157, stating:

> Petitioner's own admission[s] to his conditional release officer were sufficient evidence for the hearing examiner to conclude that Petitioner violated the terms of his supervision by committing the offense of battery. The Florida Parole Commission did not abuse its discretion in affirming the hearing examiner's findings and revoking Petitioner's conditional release supervision. It is therefore: ORDERED and ADJUDGED that the Petition filed for Writ of Habeas Corpus is DENIED.

(Exhibit I) Petitioner filed a Motion for Rehearing, which was denied on September 21, 2004. (Exhibit J)

On October 22, 2004, Petitioner filed a Petition for Writ of Certiorari in Florida's Fifth District Court of Appeals arguing that his pushing his wife was in self-defense, or alternatively, not against her will, and his right to due process was violated because the warrant was not specific enough to allow him to prepare a defense to his actions. (Exhibit K) On November 10, 2004, the Petition was denied without opinion. (Exhibit L) Petitioner filed a Motion for Rehearing, which was denied on December 20, 2004. (Exhibit M)

DISCUSSION

In his present federal Petition for Habeas Corpus Relief, Ellard argues that neither Stacey Ellard's statement to the police nor his own statement to his release officer should have been admitted as substantive evidence. Ellard also asserts that he was denied due process because the Commission did not consider Petitioner's right to defend himself. Finally, Ellard argues that he was denied due process of law in that the Notice of Conditional Release Violation failed to delineate what specific statute made Petitioner's alleged conduct unlawful.

FAILURE TO EXHAUST IN STATE COURT PROCEEDINGS

Petitioner was represented by counsel at the violation hearing. Petitioner notes in the present federal petition that counsel "failed to make an objection to the admission of Stacey Ellard's prior inconsistent statement as substantive evidence." Petition at page 14. The hearing summary, which reflects the official record of the proceedings, pursuant to Glumb v. Honstead, 891 F.2d 872 (11th Cir. 1990) indicates that there were no legal or procedural arguments presented. (Exhibit D)  Neither Petitioner nor his attorney suggested that the notice charging Petitioner with unlawfully touching or striking his wife was insufficient to formulate a defense, or that Petitioner was somehow acting in self-defense. Neither Petitioner nor his attorney objected to the introduction of the police statement or Petitioner's statement to his conditional release officer. The Commission therefore, was never asked to address the issues raised in the present federal petition.

In his Petition for Writ of Habeas Corpus in the Florida Fifth Judicial Circuit, Petitioner argued, essentially, that there was insufficient evidence from which a

determination of guilt could be made. (Exhibit F) Petitioner did not argue that his statements or the prior statements of his wife were improperly considered, that he was acting in self-defense, or that the notice was insufficient. The Fifth Judicial Circuit Court decided the case on the pleadings presented, and concluded "Petitioner's own admissions to his conditional release officer were sufficient for the hearing examiner to conclude that Petitioner violated the terms of his supervision by committing the offense of battery." (Exhibit I).

Petitioner raised the issues in the present federal petition for the first time in his Petition for Writ of Certiorari filed in Florida's Fifth District Court of Appeal. That Court did not address these issues, and could not, because the issues had not been raised in the Fifth Judicial Circuit Court and were not properly before the Fifth District Court of Appeal Court acting in a review capacity. (Exhibit L)

Although Petitioner failed to exhaust his state court remedies, this Court may reach the merits of his claims. <u>See</u> 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.")

PETITIONER DOES NOT DEMONSTRATE DEPARTURE FROM FEDERAL LAW

Under the standards set forth in the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant habeas relief to a state prisoner on a claim that has been adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;

or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established federal law if it applies a rule that contradicts the governing law as set forth by Supreme Court case law or if the state court, in a case with facts indistinguishable from those in a Supreme Court decision, reaches a different conclusion. Williams v. Taylor, 529 U.S. 362, 405-406 (2000); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000). If there is no Supreme Court decision on point, the state court's conclusion cannot be contrary to clearly established federal law. Washington v. Crosby, 324 F.3d 1263, 1265 (11th Cir. 2003).

A state court decision amounts to an "unreasonable application" of federal law if it identifies the governing legal rule from Supreme Court precedent but applies the rule in an unreasonable manner to the facts of the petitioner's case. Williams, 529 U.S. at 407-411. However, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411.

With regard to the reasonableness of a state court's determination of facts, section 2254(e)(1) sets forth a highly deferential standard of review. Under the AEDPA, a determination of a factual issue by a state court is presumed to be correct, and the petitioner carries the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

In sum, under § 2254(d)(1), a federal court may not grant habeas relief to a state prisoner on a claim that has been adjudicated on the merits in state court unless the state court reaches a conclusion opposite to that reached by the Supreme Court on a question of law, decides a case differently than the Supreme Court on a set of materially indistinguishable facts, or identifies the correct governing legal principle but applies the principle to the facts in an unreasonable manner. Williams, 529 U.S. at 412-413.

Petitioner Ellard's arguments, while couched in terms of constitutional violations, raise only state law issues, not federal or constitutional questions. The revocation hearing, and all the notices, rights and processes the Parole Commission affords a releasee are entirely guided by state law. See §§ 947.1405, 947.141, Fla. Stat. (2003); see also Fla. Admin. Code R. 23-23.010 - 23-23.011. These notices, rights and processes are also in compliance with established federal law. See Morrissey v. Brewer, 408 U.S. 471, 483 (1972).

Furthermore, on the merits, Petitioner is not entitled to relief for the following reasons:

### PRIOR STATEMENTS ARE ADMISSIBLE

Petitioner alleges that the Parole Commission's guilty findings were improperly based on his wife's statement to the police and his statement to his conditional release officer. Petitioner relies on criminal law, which prohibits the use of hearsay, unless an exception applies. In conditional release revocation proceedings, however, hearsay evidence may be introduced if corroborated by substantive evidence.

In <u>Gagnon v. Scarpelli</u>, 411 U.S. 778, (1973), the Supreme Court emphasized the distinction between revocation hearings and criminal trials, stating:

> there are critical differences between criminal trials and probation or parole hearings, and both society and the probationer or parolee have stakes in preserving these differences. In a criminal trial, a prosecutor represents the State; formal rules of evidence are in force; a Petitioner enjoys a number of procedural rights, which may be lost if not timely raised; and in a jury trial, a Petitioner must make a presentation understandable to untrained jurors. In short, a criminal trial under our system is an adversary proceeding with its own unique characteristics. <u>In a revocation hearing, on the other hand, the state is represented, not by a prosecutor, but by a probation officer with an orientation described above; formal procedures and rules of evidence are not employed; and the members of the hearing body are familiar with the problems and practices of probation and parole...</u>

<u>Gagnon</u>, 411 U.S. at 788-789; (Emphasis added).

In <u>Morrissey v. Brewer</u>, 408 U.S. 471, 483 (1972), the United States Supreme Court explained that:

> Release of the parolee before the end of his prison sentence is made with the recognition that with many prisoners there is a risk that they will not be able to live in society without committing additional antisocial acts. <u>Given the previous conviction</u> and the proper imposition of conditions, <u>the State has an overwhelming interest in being able to return the individual to prison without the burden of a new adversary criminal trial if in fact he has failed to abide by the conditions of his parole.</u> Emphasis added).

The <u>Morrissey</u> Court also made clear that all that is required is:

> an informal hearing structure to assure that the finding of a parole violation will be based on verified facts and the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior.

<u>Morrissey</u>, 408 U.S. at 484.

The Morrissey Court has further found that the use of hearsay as substantive evidence at a revocation hearing is not per se unconstitutional. See Morrissey, 408 U.S. at 499 ("We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial."); see also Gagnon, 411 U.S. at 789; Crawford v. Jackson, 355 U.S. App. D.C. 282 (D.C. Cir. 2003) (holding that "given the indicia of reliability of the police investigative report, the Board's reliance on the hearsay evidence did not render its revocation decision so lacking in support that it was fundamentally unfair."). The factfinder is not required to follow strict rules of evidence nor is he/she precluded from considering material that would not be admissible in a trial. Singletary v. State, 290 So. 2d 116 (Fla. 4th DCA 1974).

It is clear from the record that Petitioner Ellard's violation hearing complied with the general constitutional requirements set out by the United States Supreme Court in Morrissey and Gagnon. Moreover, contrary to Petitioner's allegations, the Hearing Examiner properly relied on Petitioner's own statement to his conditional release officer that he pushed his wife during an altercation.

An admission to a supervision violation is sufficient grounds for a finding of guilt and subsequent revocation of early release. Earle v. State, 519 So. 2d 757, 758 (Fla. 1st DCA 1988) (holding that probationer's admissions supported revocation orders); see also Waring v. State, 504 So. 2d 786, 787 (Fla. 2d DCA 1987) (holding that a releasee's confession of a crime, in itself, is enough to support an order of revocation of probation); Bexley v. State,

490 So. 2d 226, 228 (Fla. 2d DCA 1986) (holding that revocation of probation based upon an admission to certain probation violations was not error); Russell v. McGlothin, 427 So. 2d 280, 282 (Fla. 2d DCA 1983) (holding that "[a] probationer's admissions against interest may, as a matter of law, be sufficient to revoke his probation.").

As previously noted, for entitlement to habeas relief, a petitioner must show that the state courts' decisions are contrary to federal law, or that the decision involved an unreasonable application of federal law, as determined the United States Supreme Court. Petitioner has not presented a federal issue for this Court to review.

## PETITIONER WAS AFFORDED DUE PROCESS

Petitioner Ellard also argues that he was denied due process because the Commission did not consider that he was acting in self defense. Petitioner Ellard also argues that the Notice of Violation was not specific enough to afford him due process. The Commission did not consider these arguments, because Petitioner did not present them at the hearing. Due process of law does not require that the Commission consider arguments not made by the Petitioner. Furthermore, Petitioner has not established that denial of this "unstated" defenses amounts to a violation of due process. In Morrissey, 408 U.S. 471, 483 (1972), the Court outlined the minimum requirements of due process in revocation proceedings, which include: (a) written notice of the claimed violations; (b) disclosure of the evidence; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses(unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as traditional parole board

members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence on which it relied.  Morrissey, 408 U.S. at 489.

The notice provided to Ellard, charging him with unlawfully touching, striking, or causing bodily harm to Stacey Ellard on August 8, 2003, was sufficient, without statutory references, to inform Petitioner of the charges being levied against him.  Petitioner's newly discovered claim of self-defense was not presented at the hearing, and was not supported by his own testimony or any case law.

## PETITIONER'S REPLY

The Court does not find Petitioner's reply arguments persuasive. Although Petitioner clearly articulated his reasons as to why the present federal petition should be granted, Petitioner's arguments were not sufficient to refute the Commission's arguments as to why the petition should not be granted.

Accordingly, the Court orders:

That Petitioner's petition is denied, with prejudice.  The Clerk is directed to enter judgment against Petitioner Ellard and to close this case.

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong,"

Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on October 20, 2006.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record

Frederick Robert Ellard